# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:22-cr-00328-JLT-SKO-1 |
| Plaintiff, | ORDER ON MOTIONS IN LIMINE |
| v. | (Doc. 63) |
| STEPHEN TYLER PROCK, | |
| Defendant. | |

In this trial, Defendant Stephen Tyler Prock is charged with one count of receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2).1 (See generally, Doc. 1.) The Government submitted motions in limine regarding evidence expected to be presented at trial on April 21, 2026. (Doc. 63.) The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General

---

1 To convict Defendant of violating 18 U.S.C. § 2252(a)(2), the Government must prove the following elements beyond a reasonable doubt: (1) Defendant knowingly received or distributed a matter that the Defendant knew contained a visual depiction of minors engaged in sexually explicit conduct; (2) Defendant knew the visual depiction contained in the matter showed minors engaged in sexually explicit conduct; (3) Defendant knew that production of such a visual depiction involved use of minors engaged in sexually explicit conduct; and (4) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce. 18 U.S.C. § 2252(a)(2). The Court notes that although Defendant is not formally charged with possession of materials involving the sexual exploitation of minors under 18 U.S.C. § 2252(a)(4)(B), possession is always a lesser included offense of receiving child pornography, because "[i]t is impossible to 'receive' something without, at least at the very instant of 'receipt,' also 'possessing' it." *United States v. Davenport*, 519 F.3d 940, 943-44 (9th Cir. 2008).

1

Order 618. For the reasons discussed on the record and set forth below, the Court rules on each of the motions as follows.

## I.      LEGAL STANDARDS GOVERNING MOTIONS IN LIMINE

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).  Courts disfavor motions *in limine* seeking to exclude broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions *in limine* do not preclude either party from arguing the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely on the moving party.

## II.     DISCUSSION AND ANALYSIS

### A.      Government's Motion No. 1: The Plea Agreement

The Government's first motion *in limine* concerns whether the Defendant's plea agreement (henceforth, the "Agreement") and the factual proffer within are admissible and usable against the Defendant in the Government's case-in-chief in the forthcoming April 2026 trial.

2

(Doc. 63 at 22.) In support of its motion, Government argues that by knowingly and voluntarily signing the Agreement, the Defendant agreed to waive the protections of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) in the event he failed to enter a guilty plea as required by the Agreement. (*Id.*)

Under Rule 410, evidence from plea negotiations, including proffer sessions, is ordinarily inadmissible. Fed.R.Evid. 410; *see also* Fed.R.Crim.P. 11(f) (referring to Federal Rule of Evidence 410). However, an agreement to waive the exclusionary provisions of Rule 410 is valid and enforceable "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily." *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995). In *Mezzanatto*, the Supreme Court considered and enforced a narrow Rule 410 waiver provision in which the defendant agreed to the Government's use of his cooperation proffer only when responding to contrary testimony by the defendant himself. 513 U.S. at 198. The Ninth Circuit has adopted *Mezzanatto's* reasoning, but in a similarly narrow context. *See United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002) (holding that a criminal defendant's "proffer statements" were properly used for rebuttal at trial in light of the voluntary waivers of inadmissibility that the defendant had signed prior to his proffer sessions with the prosecutor). Here, however, the Government seeks to admit the Agreement and Defendant's proffered statements not merely as rebuttal evidence, but in its case-in-chief. (Doc. 63. at 10.)

               1.       Voluntariness of the Plea Agreement

It has long been established that a criminal defendant may waive many fundamental procedural and substantive rights, both constitutional and statutory. *See Mezzanatto*, 513 U.S. at 201, 115 S.Ct. 797 (collecting cases). However, such a waiver must be knowing and voluntary. *Id.* "To discern whether a waiver is knowing and voluntary, we must ask "what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty. *United States v. Medina-Carrasco*, 815 F.3d 457, 461 (9th Cir. 2016) (citing *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993)).

In opposing the Government's motion, the Defendant concedes failure to change his plea as required by the Agreement but contends that he did not enter into the plea agreement

3

knowingly or voluntarily. (Doc. 64 at 2.) The Defendant claims that he was "coerced" into signing the plea agreement by his former attorney who warned Defendant of the negative consequences of proceeding to trial, specifically that "the court would sentence him to twenty years on the charges in the indictment plus two years for false testimony." (Doc. 64 at 2.) The Government disputes Defendant's accusation, emphasizing the lack of evidence indicating a breakdown of the attorney-client relationship or coercion on the part of Defendant's former attorney. (Doc. 63 at 10.) The Government described Defendant's counsel, a former Federal Public Defender, as an "experienced" and "competent" attorney who vigorously advocated for the Defendant over the years that this case has been pending. (*Id.*)

Former counsel for the Defendant has executed an affidavit in this case (Doc. 84) attesting to the following: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The Court finds that the Defendant's allegations of coercion by his former attorney are unsupported by the record. The facts are not even disputed. ████████████████████████████████████████████████████████████████████ The Defendant does not contend that his former attorney failed to properly advise him of the terms of the Agreement, pressured him to sign it or threatened him if he did not sign it. Rather, this appears to be a case of Mr. Prock having second thoughts. As such, the Court finds that Mr. Prock was not coerced into signing the Agreement, and it is not unenforceable on this basis.

2.      Construction of the Plea Agreement

4

While focusing on his claim that he was coerced into signing the plea agreement, the Defendant asserts that his waiver of Rule 410 and Rule 11(f) were unknowing and involuntary. Though he does not flesh this out beyond his claims related to his former counsel, the Court considers whether, his waivers were knowing and voluntary as to these Rules according to the language of the Agreement.

"[P]lea agreements are contractual in nature and are measured by contract law standards. *United States v. Goodall,* 21 F.4th 555, 561 (9th Cir. 2021) (quoting *United States v. Clark*, 218 F.3 1092, 1095 (9th Cir. 2000)). Given the contractual nature of plea agreements, "their plain language will generally be enforced if the agreement is clear and unambiguous on its face." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir.2005) (overruled on other grounds). A plea agreement is "ambiguous if it is capable of more than one reasonable interpretation." *United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir.2002) (quotation omitted). "The government, as the drafter of [the] plea agreement, is responsible for any lack of clarity such that ambiguities are construed in favor of the defendant." *Davies v. Benov*, 856 F.3d 1243, 1247 (9th Cir. 2017) (citations omitted).

The first waiver clause related to Rule 410 and Rule 11(f) in the Agreement reads in relevant part:

> The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, **shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.** The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

(Doc. 63 at 4; Exh. 7, at ¶ II.A., emphasis added) This clause is located in Section II, Sub-Section A of the Agreement, entitled "Defendant's Obligations," "Guilty Plea."). Another section of the Agreement, under the heading, "Violation of Plea Agreement by Defendant/Withdrawal of Plea" required Mr Prock to affirm that:

> **[A]ll statements made by the defendant to the government** or other designated law enforcement agents, or any testimony given by

5

the defendant before a grand jury or other tribunal, **whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant** and (2**) the defendant shall assert no claim under** the United States Constitution, any statute, **Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence**, or any other federal rule, **that statements made by the defendant before or after this plea agreement,** or any leads derived therefrom, **should be suppressed**. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

(Doc. 63 at 5; Exh. 7, at ¶ II.F, emphasis added.)

By its plain terms, the Defendant's agreement in ¶ II.A to waive his rights under Evidence Rule 410 and Criminal Rule 11(f) in ¶ IIA becomes effective "even if the defendant fails to enter a guilty plea pursuant to this Agreement." (*Id*.) Seemingly, the upcoming trial constitutes a "subsequent criminal proceeding," because a trial is certainly a criminal proceeding and, of course, it occurs only after a plea is not entered. On the other hand, of course, this provision could be read to relate to criminal proceedings other than this current one. Paragraph II.F refers not to this current prosecution but to criminal proceedings "hereafter brought." It would make little sense to suggest that a trial in the same prosecution is a proceeding that is "hereafter brought," because a trial is not "brought" by the parties, but is, instead, a function of the judicial process if the case does not resolve in another way.

Basic principles of contract interpretation dictate that contracts "must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir.2011) (internal quotation omitted); *See also United States v. Clark,* 218 F.3d 1092 (9th Cir. 2000) (holding that in interpreting a plea agreement, courts must examine the plain language of a term in the context of the document as a whole). The question then becomes whether these two sections are to be construed together to determine in which criminal proceedings the Defendant's admissions may be used.

It appears that ¶ II.A refers to situations, as here, where the plea agreement was finalized but the plea is not entered. It appears that ¶ II.F refers to situations where the plea agreement results the defendant entering a plea but then takes other action that violates a material term of the

6

plea agreement. In the former situation, arguably, admissions in the Agreement may be used in a trial in the current criminal matter or a different criminal matter; in the latter, it may be used in actions brought only after the current criminal prosecution. Though the Court has reservations over the clarity of the Agreement, the Defendant does not take the position that it is unclear, suggesting that the parties understood the meaning and intention of the contract's provisions. Consequently, and without any showing to the contrary, the Court finds that the Defendant knowingly and voluntarily entered into the Agreement despite the significant impacts that would be imposed for his failure to enter a plea or to honor its terms.[2]

Having found the contract to be enforceable and now finding that the Defendant knowingly and voluntarily waived the protections of Rules 410 and Rule 11(f), the Court considers whether introduction of the Agreement in the government's case-in-chief, is consistent with Federal Rules of Evidence 403 in these circumstances. Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . ." Under Rule 611(a), the Court is obligated to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth . . ."

The prejudice of this evidence is clear. The Factual Basis for the Plea, which was attached to the Agreement as Exhibit A, recited the elements of the offense and plugged in the Defendant's name into each element, noting explicitly that the Defendant knowingly received and distributed 600 or more prohibited images of child pornography, and used his HP Desktop computer to do so, which was made in China and had traveled in foreign commerce. (Doc. 63 at 5; Exh. 7 at 15) Finally, the factual basis included that the depictions included images of "prepubescent minors engaged in sado-masochistic conduct and sexual abuse of a toddler." *Id*. Indeed, the extent of the

---

[2] In all fairness, the penalty for a breach of the Agreement as set forth in ¶ II.F, seems appropriate. Having received the benefit of the Agreement, a defendant should not be allowed to shirk the obligations imposed on him by it. On the other hand, the penalty for failing to enter the plea set forth in ¶ II.A seems less tied to reason. If a Defendant signs the Agreement but does not go forward with the entry of the plea, he has received no benefit and the government has suffered no detriment except, perhaps, the waste of time in drafting the agreement. Presumably, this paragraph is included to impress upon the defendant the seriousness of the decision to enter into the Agreement and to impose the required solemnity for evaluating the benefits and burdens the Agreement requires. The determination as to whether the burden on the Defendant is sufficiently and properly tied to this goal, is left for another day.

prejudice imposed by this document is nearly impossible to overstate, and it would relieve the government of the need to introduce any other evidence. Thus, consistent with *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995) and *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002), the Court **GRANTS** the motion to the extent that the government may use the plea agreement in cross-examination of the defendant if he chooses to testify and in rebuttal, but **RESERVES** its ruling related to the use of this evidence in the government's case-in-chief. Should the government persist in seeking to introduce this evidence in its case-in-chief, it **SHALL** alert the Court outside the presence of the jury, so that it may hear argument as to Rule 403.

**B.      Government's Motion in Limine No. 2: Expert Testimony**

In its second motion *in limine*, the Government provides notice of its intent to call two Homeland Security Investigations Special Agents and Computer Forensics Agents to testify as experts in peer-to-peer ("P2P") file sharing networks and investigations as well as computer forensics. (Doc. 63 at 11.) Additionally, the Government requests that the Court make explicit reliability findings pursuant to Rule 702 and *United States v. Holguin*, 51 F.4th 841 (9th Cir. 2022) of the experts anticipated testimony. (*Id*. at 12.) The Defendant does not oppose this motion. (Doc. 64 at 2.)

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise, if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Ordinarily, to determine whether the expert testimony will validly assist the trier of fact, a court may consider: (1) whether the expert's theory or technique can be tested, (2) whether the theory or technique was subject to peer review through publication, (3) the potential rate of error, (4) standards controlling the technique's operation, and (5) general acceptance within a relevant community. *Daubert v. Merrell Dow Pharm*, 509 U.S. 579, 593-95

(1993).

"Rule 702 grants the district judge the discretionary authority ... to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). In evaluating reliability, an expert may "draw a conclusion from a set of observations based on extensive and specialized experience," and may rely on, for instance, "visual examination and process of elimination" to formulate an opinion. *See id*. at 156; *see also United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (an expert may rely on personal knowledge or experience to formulate opinion); *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1058 (9th Cir. 2003) (context of differential diagnosis of medical patient: "Dr. Elston's reasons for reaching the conclusion, by process of elimination, that contact toxicity was the specific cause of the oyster deaths were similarly reliable.") (emphasis in original); Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").

Other relevant reliability considerations include, *inter alia*, "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 advisory committee notes to 2000 amendment, *e.g., Clausen*, 339 F.3d at 1058 ("A district court is justified in excluding evidence if an expert utterly fails to offer an explanation for why [a] proffered alternative cause was ruled out.") (cleaned up) (internal quotation marks and citation omitted). However, "an expert need not rule out every potential cause in order to satisfy *Daubert*, as long as the expert's testimony addresses obvious alternative causes and provides a reasonable explanation for dismissing specific alternate factors identified by the defendant." *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) (cleaned up) (internal quotation marks and citation omitted).

The Government notes that other courts in the Ninth Circuit found that the type of testimony discussed in the Government's notices is properly admissible. *See United States v. Flocker*, 504 Fed. Appx. 637, 639 (9th Cir. 2013) (holding that the district court did not err in admitting testimony of a government computer expert in a child pornography case); *United States v. Phipps*, No. 21-50168, 2024 WL 4164158 (9th Cir. Sept. 12, 2024) (same). Having reviewed

9

the motion, supporting information and response by the government, the Court finds that SA Jedrey and SSA Solorio are qualified under *Daubert* and *Holguin* to testify as to the matters outlined in the Government's notice. Moreover, the Defendant does not oppose this motion. (Doc. 64 at 2) As such, the Government's second *Motion in Limine* is **GRANTED**.

### C. Government's Motion No. 3: 404(b) Evidence

In its third motion *in limine*¸ the Government seeks to admit four categories of "other acts" evidence under Federal Rule of Evidence 404(b): 1) evidence related to three child pornography videos located on an AlienWare computer seized from the Defendant's bedroom; 2) evidence of deleted files with filenames indicative of child pornography on the Defendant's computer; 3) the Defendant's statements about his prior experience viewing child pornography; and 4) evidence of the Defendant's receipt and distribution of more than one image of a minor engaged in sexually explicit activity. (Doc. 63 at 12.)

Rule 404(a) provides "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). However, prior acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *See Huddleston v. United States*, 485 U.S. 681 (1988*); United States v. Hadley*, 918 F.2d 848, 850 (9th Cir.1990).

The Ninth Circuit has held that "Rule 404(b) is a rule of inclusion." *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if it is relevant to an issue other than the defendant's character or criminal propensity." *Id*. Generally, evidence of other acts that explain the nature of the relationship between the defendant and a witness and/or put their interactions into context is admissible under Rule 404(b). *See United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir. 1985).

Because evidence of other crimes or wrongful conduct is potentially prejudicial, *see Alfonso*, 759 F.2d at 739, it may only be admitted under 404(b) if it: "(1) it tends to prove a material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the

10

act is similar to that charged." *See United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020) (citation omitted); *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000). Additionally, evidence admissible under Rule 404(b)(2) is still subject to exclusion under Federal Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998).

### 1.   Child Pornography Discovered on the AlienWare Computer

The first category of Rule 404(b) evidence the Government seeks to introduce is evidence of child pornography found on an AlienWare computer[3] seized from the Defendant's bedroom. (Doc. 63 at 14.) The Government contends that such evidence is admissible at trial because it "tends to prove that the defendant knowingly and intentionally" received child pornography, rather than through accident or mistake.[4] (*Id*.)

First, the child pornography found on the AlienWare computer tends to prove a material fact in the case. The Government argues that the Defendant's state of mind will be a key issue at trial because Government must prove that the Defendant knowingly received and distributed child pornography and whether the Defendant knew the material involved the use of an actual minor engaged in sexually explicit conduct. (*Id*. at 13.) Evidence that the defendant had not one, but two devices containing child pornography tends to show the defendant knowingly received the material, as opposed to by mistake or accident, as he received and possessed such material on multiple occasions. *See United States v. Long*, 328 F.3d 655, 663 (D.C. Cir. 2003) ("It hardly can be denied that 'in cases where a defendant is charged with unlawful possession of something,

---

[3] The Government notes that the AlienWare computer is different than the device (the HP Computer) charged in the Indictment. (Doc. 63 at 14.) On the AlienWare computer discovered in Defendants' bedroom, law enforcement agents located approximately three files depicting child pornography. (*Id*. at 3.) The metadata associated with the videos indicated that the videos were downloaded on to the AlienWare computer between on or about June 14, 2018, and on or about July 18, 2018. (*Id*.)

[4] The Government briefly suggests the child pornography discovered on the AlienWare computer is "inextricably intertwined" with the conduct underlying the charged offenses and, therefore, not other acts. (Doc. 63 at 14.) The Government, however, did not provide any argument or authority to support this position in its motion. Consequently, the Court does not rule on whether the child pornography videos are inextricably intertwined with the charged conduct.

11

evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged'").

Second, there is sufficient evidence to support a finding that the Defendant possessed the child pornography discovered on the AlienWare computer. "[S]imilar act evidence is relevant ... if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689. The Government offers the following evidence to show that the Defendant possessed the child pornography discovered on the AlienWare computer: (1) the computer was located in the Defendant's bedroom, (2) the computer contained the username "stp09," consistent with the defendant's initials, and (3) the Defendant told law enforcement that the devices found in his bedroom were his, were password protected, and were not accessible by his roommate. (Doc. 63 at 15.) The Defendant does not appear to challenge that he owned the AlienWare device or that he was the only person with access.

Third, the act at issue here is sufficient similarity to the conduct charged. The Defendant's past conduct need not be identical to the conduct charged but need only be similar enough to be probative of intent. *See United States v. DeSalvo*, 41 F.3d 505, 509–10 (9th Cir.1994); *United States v. Hernandez–Miranda*, 601 F.2d 1104, 1108–09 (9th Cir.1979). The Court finds that receipt and possession of child pornography on one device is sufficiently similar to receipt and possession of other child pornography on another device.

Lastly, the alleged possession of child pornography found on the AlienWare computer was not too remote in time. The Government maintains that the metadata from three files containing child pornography located on the AlienWare shows that the files were downloaded on to the computer between on or about June 14, 2018, and on or about July 18, 2018. (Doc. 63 at 15.) This roughly year long timeframe charts the timeframe in the Indictment: "beginning on a date unknown but no later than approximately May 29, 2018 and continuing through approximately March 4, 2020." (*Id*.) Regardless of when the child pornography was created, it suffices that it was discovered on the AlienWare computer around the time of Defendant's arrest.

Finally, the probative value of the child pornography on the AlienWare computer is not substantially outweighed by its prejudicial effect. In his opposition, Defendant argues the

12

probative value of "other acts" evidence is substantially outweighed by the danger unfair prejudice given that the images found on the AlienWare computer are not charged in the indictment. (Doc. 64 at 2.) While the Court is cognizant of the risk of prejudice in showing uncharged child pornography to a jury, such risk is not outweighed by the probative nature of the evidence in a case such as here where the Defendant may argue mistake as a defense to possession. *See United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014) (holding that evidence of uncharged child pornography was not excludable pursuant to Rule 403 because "[t]he uncharged videos were probative of [Defendant's] knowledge and relevant to his defense that he downloaded the [two charged] videos accidentally…").  Therefore, the Court **GRANTS** the Government's request to introduce evidence of child pornography found on the AlienWare computer to show the Defendant's knowledge, intent, motive, and lack of mistake or accident.

2.    Deleted Files with Filenames Indicative of Child Pornography on Discovered on Defendant's Computer

The Government next moves to introduce "residual evidence" of deleted files containing filenames indicative of child pornography. (Doc. 63 at 16.) The Government argues that such "residual evidence" discovered on the Defendant's devices tends to prove that the Defendant knowingly and intentionally received and possessed child pornography. (*Id*.) Following a forensic analysis of the Defendant's devices, federal agents discovered numerous file names indicative of child pornography that appeared to have been stored on the Defendant's HP Computer E:\ drive. (Doc. 63 at 3.) The files themselves were found in a "deleted space" and therefore were not recoverable, yet the Government alleges that the names of the files were visible and contained titles consistent with child pornography.[5] (*Id*.) The Defendant opposes the admission, arguing that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, and needlessly presenting cumulative evidence. (Doc. 64 at 3.)

The Government notes that a new search warrant was obtained on March 9, 2026, authorizing the further examination of the extractions of Defendant's HP computer and AlienWare computer and requests permission to supplement this notice and motion *in limine* with

---

[5] The Government did not provide the Court with any examples of the relevant file names.

addition evidence related to the timing of the deletions and "to further show that there is sufficient evidence of the defendant deleting the files." (Doc. 63 at 17.)

The Court **GRANTS** the Government's request to supplement its motion *in limine* to the extent that such newly presented evidence relates to the allegedly deleted files in question. The Court will therefore **RESERVE** a ruling on the admissibility of the deleted file names until after the Government has presented its supplemental showing resulting from the recent search warrant. The Court notes that the Government will have to present some evidence that Defendant would have been aware based on the file names that the Defendant's intent was to possess child pornography.

### 3. Evidence that Defendant Viewed Child Porn on a Prior Occasion

The Government next seeks to introduce Defendant's statements regarding viewing child pornography in the past. (Doc. 63 at 18.) When questioned by law enforcement during a pre-arrest interview on March 16, 2020, Defendant admitted to "accidentally" viewing child pornography on one occasion, which he ultimately found to be an aversive experience.[6] (Doc. 63 at 3; 63-5 at 4.) The Government argues that this prior "accidental" viewing of child pornography tends to prove the material point that the Defendant knowingly and intentionally received and maintained possession of the charged child pornography. (Doc. 63 at 18.) For the reasons set forth in Section II.C.1, the Court **GRANTS** the Government's request to introduce Defendant's statements regarding viewing child pornography in the past to show Defendant's knowledge, intent, motive, and lack of mistake or accident.

### 4. Receipt and Distribution of More than One Image Depicting a Minor Engaged in Sexually Explicit Activity

The Government seeks to introduce evidence in the form of video excerpts and still images from approximately 15 child pornography videos recovered from the Defendant's

---

[6] The Government notes that although the Defendant did not specify when he viewed the child pornography, the experience was "not so remote in time that he could not recall the experience and his purported lack of interest in the material." (Doc. 63 at 18.) The Court notes that Ninth Circuit has repeatedly declined to adopt an inflexible rule regarding remoteness in the context of Rule 404(b), particularly when "[t]he similarity of the prior act to the offense charged outweighs concerns regarding remoteness." *Hadley*, 918 F.2d at 851.

device(s). (Doc. 63 at 19.) The Government argues that introducing a sub-set of a greater collection of image relates to the Defendant's receipt and distribution of more than one image of child pornography and tends to show Defendant's knowledge, intent, and lack of mistake or accident. (*Id*.)

To the extent the video excerpts and still images were those uncovered from the Defendant's HP computer (the charged device in this case), such images are not extrinsic to the crime but are "part of the actual pornography possessed." *United States v. Dodds*, 347 F.3d 893, 898 (11th Cir.2003). Consequently, the images are probative in that "they show that the images actually were child pornography, they tend to show that [Defendant] knew the images were child pornography, [and] they infer intent on [Defendant]'s part to collect such pornography[.]" *Id*. at 899 (upholding admission of 66 pictures out of 3,400 available images). The Defendant does not oppose the admission of more than one image of child pornography but asserts that "15 short clips or screen shorts may be excessive." (Doc. 64 at 3.)

In *United States v. Ganoe*, the Ninth Circuit held that the district court did not abuse its discretion in allowing the prosecution to select and show ten images alleged to be child pornography because the probative value of the images was not substantially outweighed by their prejudicial effect. 538 F.3d 1117, 1120–21, 1123 (9th Cir.2008). This is particularly relevant in the instant case, where the Defendant offers no stipulations that would relieve the government of its obligation to present the images to prove its case. *Id*. at 1123. In acknowledging that depictions of child pornography are inherently prejudicial, the district court in *Ganoe* attempted to minimize the inflammatory nature of the images by limiting the government to ten clips, playing the images only once, and giving cautionary instructions. *Id*; *see also United States v. Storm*, 915 F. Supp. 2d 1196 (D. Or. 2012), *aff'd*, 612 F. App'x 445 (9th Cir. 2015) (noting that "[t]he Ninth Circuit and other courts have looked favorably on efforts by district courts to manage potentially prejudicial impact by limiting the number of images published to the jury....").

As Defendant's knowledge of the child pornography is directly at issue in the case, and no appropriate stipulations have been offered, these still images and video excerpts are "highly probative of the state of mind with which the files were received and possessed." *Ganoe*, 538

F.3d at 1123–24. Showing select images of child pornography will allow the jury to determine if the Government met its burden of proof as to whether Defendant knowingly received or possessed an item or items of child pornography and whether at the time of such reception or possession Defendant believed that such item(s) constituted or contained child pornography.

For these reasons, the Court **GRANTS** the Government's motion to admit video excerpts and still images captured from child pornography videos recovered from the Defendant's computers. The Government shall present only the fifteen video excerpts or still images mentioned and the time the videos/images are displayed **SHALL** be limited such to prevent cumulative evidence or inflaming the passions of the jury.

### D.      Government's Motion No. 5[7]: Self-Serving Hearsay

Lastly, the Government seeks to preclude the Defendant from introducing any hearsay statements made and offered in any manner other than through his own direct testimony.[8] (Doc. 63 at 20.) The Government anticipates introducing at trial incriminating statements Defendant made to law enforcement as admissions by a party opponent. (*Id*.) These incriminating statements were made as part of a larger discussion in which Defendant speculated about someone accessing his password protected computers in his bedroom without his knowledge. (*Id*.) The Government characterizes these statements as self-serving hearsay that do not implicate the rule of completeness, which therefore should be excluded as inadmissible hearsay if offered by the Defendant. (*Id*.) The Defendant does not oppose this motion. (Doc. 64 at 3.)

Pursuant to Rule 801 of the Federal Rules of Evidence, hearsay is a statement that, "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). If the prior statements made by a defendant are offered against him or her by the government, such statements constitute non-hearsay and are admissible as admissions by a party opponent. Fed. R. Evid. 801(d)(2)(A).

---

[7] The Government did not file a motion in limine #4.

[8] The Government argues that even if the defendant testifies at trial and is cross-examined on his truthfulness, it is unlikely that his prior statements would be admissible under Rule 801(d)(1)(B). (Doc. 63 at 20.) The Court declines to address this argument at this time and will revisit the issue if the Defendant elects to testify.

Conversely, statements made by the defendant to others, and offered for their truth by the defendant, are inadmissible hearsay. *See id.*; *see also United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, but the non-self-inculpatory statements [made contemporaneously and offered by the defendant] are inadmissible hearsay"). Moreover, a defendant may not use his or her own prior statements even where the government introduced only incriminating portions of them. *See, e.g.*, *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (permitting government agents to testify concerning incriminating portions of post-arrest interview but precluding defendant from introducing exculpatory statements).

Here, the Defendant's speculation that someone accessed his password-protected computers in his bedroom without his knowledge and downloaded child pornography onto the computers would constitute inadmissible hearsay because it is an out-of-court statement and offered in evidence to prove that Defendant did not knowingly receive or possess the child pornography charged in this case. Consequently, the Government's motion to exclude hearsay statements made and offered by Defendant and to introduce the Defendant's own incriminating statements as statements of an opposing party under Rule 801(d)(2)(A) is **GRANTED**.

**III.    ORDER**

Based on the foregoing, it is therefore **ORDERED** that:

(1) The Government's Motion *in Limine* No 1. is **GRANTED in PART** and **RESERVED in PART**.

(2) The Government's Motion *in Limine* No. 2 is **GRANTED in PART** and **RESERVED in PART**.

(3) The Government's Motion *in Limine* No. 3 is **GRANTED.**

(4) The Government's Motion *in Limine* No. 5 is **GRANTED**.

IT IS SO ORDERED.

Dated:   **April 11, 2026**

UNITED STATES DISTRICT JUDGE

17